**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE EQUIFAX, INC. DATA BREACH LITIGATION** | MDL No. Pending No. 49 |

**COMBINED BRIEF IN SUPPORT OF TRANSFER OF ACTIONS
PURSUANT TO 28 U.S.C. § 1407
<u>AND FOR EXPEDITED CONSIDERATION</u>**

Adam J. Levitt
Amy E. Keller
Daniel R. Ferri
**DiCELLO LEVITT & CASEY LLC**
Ten North Dearborn Street
Eleventh Floor
Chicago, Illinois 60602
T 312-214-7900
alevitt@dlcfirm.com
akeller@dlcfirm.com
dferri@dlcfirm.com

Andrew N. Friedman
Douglas J. McNamara
Sally Handmaker
**COHEN MILSTEIN, SELLERS
& TOLL PLLC**
1100 New York Avenue, NW, Suite 500
Washington, DC 20005
T 202-408-4600
afriedman@cohenmilstein.com
dmcnamara@cohenmilstein.com
shandmaker@cohenmilstein.com

Kenneth S. Canfield
Georgia Bar No. 107744
**DOFFERMYRE SHIELDS CANFIELD
& KNOWLES, LLC**
1355 Peachtree St., NE
Suite 1600
Atlanta, Georgia 30309
T 404-881-8900
kcanfield@dsckd.com

James Pizzirusso
**HAUSFELD**
1700 K St. NW
Suite 650
Washington, D.C. 20006
T 202-540-7200
jpizzirusso@hausfeld.com

Pat A. Cipollone
Robert B. Gilmore
**STEIN MITCHELL CIPOLLONE
BEATO & MISSNER LLP**
1100 Connecticut Ave., N.W.
Washington, DC 20036
T 202-737-7777
pcipollone@steinmitchell.com
rgilmore@steinmitchell.com

*Counsel for Plaintiffs in the
Washburn Action*

Pursuant to 28 U.S.C. § 1407 and Rules 6.2 and 6.3 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, John Washburn, Aver Ash, Cassandra Powers, James Findlay, AmySue Taylor, and Evelyn Gualandi, Plaintiffs in the action styled *Washburn, et al. v. Equifax, Inc.*, No. 17-mi-99999-UNA (N.D. Ga.) (the "*Washburn* Action"),[1] respectfully submit this brief in support of expedited consideration and transfer of pending actions to the Northern District of Georgia for coordinated or consolidated pretrial proceedings.

Late last week, Equifax, Inc., one of the three, major consumer credit reporting agencies in the United States, disclosed, for the first time, that hackers had gained access to company data that potentially compromised sensitive personal and financial information for 143 million American consumers—nearly half of the country. That hacked and stolen information includes names, addresses, birth dates, Social Security numbers, driver's license numbers, and credit card numbers. "The attack on the company represents one of the largest risks to personally sensitive information in recent years[.]"[2] A vice president and distinguished fraud analyst at Gartner, Inc., a leading research and advisory company, said that "On a scale of 1 to 10 in terms of risk to consumers, this is a 10."[3]

Several class action lawsuits shortly followed, with at least two dozen actions currently

---

[1] Plaintiffs in this action are awaiting a permanent case number, as the United States District Court for the Northern District of Georgia is currently closed due to Hurricane Irma.

[2] Tara Siegel Bernard, et al., *Equifax Says Cyberattack May Have Affected 143 Million in the U.S.*, The New York Times (Sept. 7, 2017), *available at* https://www.nytimes.com/2017/09/07/business/equifax-cyberattack.html?mcubz=0.

[3] *Id.*

pending.[4]   The lawsuits all overlap, concern the same data breach incident, and will involve the same discovery and motion practice.  Transfer of these actions before one forum for coordinated or consolidated pretrial proceedings would be in the best interests of judicial economy, and lessen the risk of inconsistent judgments.  Although the lawsuits span courts across the County, one jurisdiction, in particular, makes the best sense for transfer and consolidation: the Northern District of Georgia, which is where Equifax is located and is the center of gravity for this litigation, and where many cases are on file and where additional cases will be filed.

Given that Equifax's breach is so widespread, Movants assert that delay of a ruling from the Panel until the next Panel Session (November 30) almost certainly would result in piecemeal litigation of dozens of similar cases across the country, with the attendant inefficiencies, uncertainty, and potential for conflicting actions for the next several months.  Considering the important and immediate security risks at issue, Movants request that the Panel consider this motion at its next hearing session on September 28, 2017 (rather than two-and-a-half months from now), and set an expedited briefing schedule for this motion requiring responses to be filed on September 18, and replies on September 22.  If any multidistrict case ever counseled in favor of expedited consideration of transfer, it would be this case where so much of the country is affected and so much is at stake.

## I.     BACKGROUND

On September 7, 2017, Equifax announced that a giant cybersecurity data breach had occurred in its data systems from mid-May through July 2017.  *Washburn* Compl. ¶ 3.  This hack allowed hackers to access names, Social Security numbers, birth dates, addresses, and driver's

---

[4] This is an initial estimate by plaintiffs in the case styled *McGonnigal, et al. v. Equifax, Inc.*, No. 17-cv-03422 (N.D. Ga.).  Given that some courts in the Southeastern United States have been closed due to Hurricane Irma, it is likely that more have been filed that have not yet appeared on the docket.

license numbers for millions of individuals. *Id.* In addition, Equifax reported that the hackers gained access to approximately 209,000 customers' credit card numbers, and had also obtained financial dispute documents containing personal identifying information for approximately 182,000 U.S. customers. *Id.* Although Equifax discovered the breach on July 29, 2017, it waited more than a month to inform the public. *Id.* ¶ 4.

The security risk goes beyond the potential for identity and credit theft for nearly half of the United States population: it also poses a possible national security threat, as personal information of governmental employees useful for cyberwarfare will be available on the Dark Web for years to come.[5] The breach also impacts the U.S. economy—calling into question the reliability of one of only three major bureaus that provide information on the creditworthiness of millions of Americans. The impact of the breach is expected to be felt for decades.[6]

Given the scope of the data breach (impacting an estimated 143 million consumers), the sensitivity of the personal and financial data that has been revealed, and the threat of significant harm that the breach poses, Movants respectfully submit that that the Panel should consider transfer as soon as possible. Equifax's announcement—and subsequent treatment of—the breach has only added to the alarm and confusion among the public. Equifax delayed notifying the public for more than a month after it learned of the breach, allowing the consequences of identity theft and fraud to build during the past weeks, while consumers remained in the dark about the current and prospective harm they faced. Conflicting statements on Equifax's websites and by its representatives have called into question whether consumers will be able to file lawsuits

---

[5] Bernard, *supra* n.2.

[6] Andrew Soergel, *Equifax Breach Could Have "Decades of Impact,"* U.S. News & World Report (Sept. 8, 2017), *available at* https://www.usnews.com/news/articles/2017-09-08/equifax-breach-could-have-decades-of-impact-on-consumers.

against the company in the future for incidents related to the breach.[7]  Moreover, Equifax's website that it set up for consumers to see if they have been impacted by the breach requires consumers to enter the very personal information that was already compromised by Equifax's lax security systems and provides no definitive answer for concerned individuals to see if their security was compromised.[8]  Beyond that, Equifax is convincing consumers to sign up for a free service to individuals who visit its website, burying in the fine print that the service will require individuals to pay for the service unless they affirmatively choose to cancel it.[9] Millions of Americans are waiting for answers, and a coordinated, consolidated proceeding before one Court is the best way to address the immediate security interests and resulting public confusion posed by Equifax's massive breach.

   A.    **The pending lawsuits.**

   Plaintiffs filed their class action on September 8, 2017, in the Northern District of Georgia (the *Washburn* Action).  There are cases pending in federal district courts in California, Colorado, Georgia, Illinois, Indiana, Kansas, Michigan, Minnesota, Nevada, New York, Ohio,

---

[7] Brian Fung, *Equifax finally responds to swirling concerns over consumers' legal rights*, Washington Post (Sept. 10, 2017), *available at* https://www.washingtonpost.com/news/the-switch/wp/2017/09/08/what-to-know-before-you-check-equifaxs-data-breach-website/?utm_term=.80b6249f388d.

[8] Brian Fung, *Equifax finally responds to swirling concerns over consumers' legal rights*, Washington Post (Sept. 10, 2017), *available at* https://www.washingtonpost.com/news/the-switch/wp/2017/09/08/what-to-know-before-you-check-equifaxs-data-breach-website/?utm_term=.80b6249f388d.  Equifax has since indicated it may not enforce these terms, either, but the company's shifting positions and the consumer confusion thus engendered only heightens the need for judicial oversight and intervention, in order to protect the public.

[9] Liz Moyer, *Were you affected by the Equifax data breach?  One click could cost you your rights in court*, CNBC (Sept. 8, 2017), *available at* https://www.cnbc.com/2017/09/08/were-you-affected-by-the-equifax-data-breach-one-click-could-cost-you-your-rights-in-court.html.

Oregon, and the District of Columbia.  The lawsuits name Equifax or Equifax-related entities, and Equifax is headquartered in Atlanta, in the Northern District of Georgia.

## II.      ARGUMENT

The Panel should expedite re consideration of Plaintiffs' motion to transfer the pending actions.  At least two dozen cases have been filed, and with 143 million individuals affected, there will most certainly be dozens if not hundreds more.  Transfer is inevitable, and transferring the actions to Equifax's backyard makes the most sense.

### A.      Expedited consideration of Plaintiffs' motion is necessary.

The Judicial Panel on Multidistrict Litigation's Rule 6.3 contemplates that parties may move the Panel for expedited consideration of any motion. Motions for accelerated briefing schedule or special hearing date may be appropriate "in a case presenting unusual need for such relief."[10] Here, the privacy and security interests at stake for nearly half of the country, combined with the confusion caused by Equifax's rollout of its breach announcement counsels for immediate resolution of the motion to transfer and coordinate.  The Panel should resolve the motion for transfer soon, after establishing an expedited briefing schedule,[11] so that the transferee court can comment on the appropriate mechanism to address Plaintiffs' immediate security concerns and ensure that the U.S. retail banking, consumer credit, and other vital markets are not further undermined as a result of Equifax's wrongful conduct.

---

[10] 2 David F. Herr, Multidistrict Litigation Manual §4:25 (2012).

[11] Plaintiffs suggest that responses should be due on September 19, and replies should be due on September 25.  This would enable the Panel to hear argument concerning transfer on September 28.

1. **The data breach presents immediate security concerns for millions of Americans.**

The personal data of millions of Americans—including their Social Security numbers—is now available online for opportunistic and enterprising identity thieves to create false accounts, run up charges on existing credit cards, and otherwise ruin the credit of nearly half the country—things that have already started happening as a result of this data breach. Although Equifax is offering some relief for individuals impacted by the breach (although that relief is limited largely to directing consumers to enroll in short term credit protection from a company that Equifax owns), the rising number of lawsuits being filed against Equifax demonstrate the obvious: Equifax's proposed relief is grossly inadequate to protect consumers against the real threat created by Equifax's security flaws.[12]  The breach has created an immediate need for action.

2. **Confusion regarding the relief offered by Equifax, and whether individuals were impacted by the breach, will only deepen absent transferee court guidance.**

In the days following Equifax's announcement of the breach, individuals took to the Internet, discussing the confusion caused by Equifax's website, and the company's failure to give consumers straight answers as to whether they were impacted by the breach that occurred over a month ago.  One individual was able to demonstrate that the Equifax site set up to inform customers as to whether their data might have been compromised in the breach had the same response to real and fake information: maybe.

---

[12] For example, a credit freeze would prevent Equifax from releasing a credit report for an individual, which would prevent identity thieves from opening false accounts.  Equifax charges $10 for this service.  *See* Gail MarksJarvis, *As the investigation into Equifax data breach grows, here's what you need to do*, Chicago Tribune (Sept. 9, 2017), *available at* http://www.chicagotribune.com/business/ct-equifax-consumer-protection-0910-biz-20170908-story.html.



[13]

Additional confusion is being caused by the arbitration clause buried in the fine print of Equifax's terms of use, which requires individuals to resolve 'any claim, dispute, or controversy" in arbitration proceedings.[14]   Although Equifax has now stated that its arbitration clause "does not apply to this cybersecurity incident,"[15] there is no guarantee that Equifax will not argue that the arbitration clause will apply to these same individuals in the future.[16]   As millions of Americans determine what next steps they will take to protect themselves from the impact of Equifax's massive breach, the transferee court will be instrumental in requiring Equifax to issue detailed, corrective notices so that consumers can make informed decisions and the severe (and still-expanding) damages from this unprecedented data breach event can be swiftly and conclusively addressed and implemented in a single forum.

---

[13] Soergel, *supra* n.6.

[14] Equifax Terms of Use, http://www.equifax.com/terms/ (last accessed Sept. 10, 2017).  *See also* Polly Mosendz, et al., *Equifax's Hacking Nightmare Gets Even Worse for Consumers*, Bloomberg Technology (Sept. 8, 2017), *available at* https://www.bloomberg.com/news/articles/2017-09-08/equifax-s-hacking-nightmare-gets-worse-thanks-to-arbitration-clause.

[15] Bryan Logan, *Equifax responds to confusion surrounding a massive security breach affecting 143 million customers*, Business Insider (Sept. 8, 2017), *available at* http://www.businessinsider.com/equifax-responds-security-breach-arbitration-clause-website-call-center-2017-9.

[16] Mosendz, supra n.14.

**3.     Delaying consideration of this transfer motion until the Panel's November 30 hearing will unnecessarily and prejudicially delay vital relief to Plaintiffs' and the other Class members.**

As discussed immediately below, the Panel should not wait until the November JPML hearing session to determine whether these cases should be transferred to a single court for coordinated or consolidated pretrial proceedings, and the court to which these cases should be transferred.  Data breach cases—arising out of single events impacting millions of individuals—demonstrate one of the clearest cases for consolidation.[17]  And, as Equifax is headquartered in the venue where the vast majority of these actions have already been filed, transferring the actions to the Northern District of Georgia is the obvious answer to the efficient resolution of these cases.

**B.     Transfer is inevitable, because the cases meet the criteria set forth in Section 1407.**

Overlapping class action lawsuits, like those at issue here, involve the type of common questions that are particularly well suited for transfer and coordination under 28 U.S.C. § 1407.  *See generally In re IDT Corp. Calling Card Terms Litig.*, 278 F. Supp. 2d 1381, 1381 (J.P.M.L. 2003).  The filed complaints assert the same common nucleus of operative facts: Equifax was hacked, and the information of 143 million individuals was compromised.  Transfer and coordination under Section 1407 is, thus, appropriate.  *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, --- F. Supp. 2d ---, 2014 WL 2547817, at *1 (J.P.M.L. June 3, 2014).

Centralization of these actions in a single judicial district for coordinated pretrial proceedings will promote the just and efficient conduct of these actions, will serve the

---

[17] *See, e.g., In re Yahoo! Inc. Customer Data Security Litig.*, MDL No. 2752 (N.D. Cal.); *In re Anthem, Inc. Data Breach Litigation*, MDL No. 2617 (N.D. Cal.); *In re Premera Blue Cross Customer Data Security Breach Litig.*, MDL No. 2633 (D. Or.); *In re Home Depot, Inc., Customer Data Security Litig.*, MDL No. 2583 (N.D. Ga.); *In re Sony Gaming Networks and Customer Data Security Litig.*, MDL No. 2258 (S.D. Cal.); *In re Target Corporation Customer Data Security Breach Litig.*, MDL No. 2522 (D. Minn.).

convenience of all parties and witnesses, and will promote the interest of justice as all actions involve common factual and legal issues.  All actions are brought on behalf of individuals in connection with the compromise of their personal data because of Equifax's actions or inaction.  The common core allegation in each action is that Equifax's vulnerable systems allowed a security breach to occur, in violation of various statutes and common law obligations.  Transfer to a single forum is appropriate because it will prevent duplication of class and merits related discovery, and eliminate the possibility of overlapping or inconsistent pleading and pretrial determinations by courts of coordinate jurisdiction.  *See e.g. In re: Caterpillar, Inc., C13 & C15 Engine Prod. Liab. Litig.*, --- F. Supp. 2d ----, 2014 WL 2616818, at *1 (J.P.M.L. June 11, 2014) ("Centralization will . . . prevent inconsistent pretrial rulings (particularly as to class certification) . . . ."); *In re Sugar Indus. Antitrust Litig.*, 395 F. Supp. 1271, 1273 (J.P.M.L. 1975) ("We have consistently held that transfer of actions under Section 1407 is appropriate, if not necessary, where the possibility of inconsistent class determination exists.").

The anticipated voluminous discovery documents to be produced in each of the class actions further warrants transfer and consolidations.  Discovery will be centered on Defendant's policies and procedures, security and data breach protocols, and the circumstances leading to the ultimate breach and resultant damage, which will necessarily overlap in each of the actions.  Coordinating discovery and pretrial proceedings will streamline the actions' course, promoting the most efficient use of resources for the parties and the Court.  Centralizing these actions in a single transferee court will ease the burden on the individual parties, their attorneys, and presiding judges by distributing the workload into a more manageable, structured proceeding.  The possibility of inconsistent rulings on pretrial issues, including rulings on discovery and privilege objections, weighs in favor of transfer.  *See In re Enron Securities Derivative & ERISA Litig.*,

196 F.Supp.2d 1375, 1376 (J.P.M.L. 2002) (granting a transfer in part to prevent inconsistent pretrial rulings, particularly with respect to questions of class certification).

Because the actions all arise out of the same core nucleus of operative facts, and with the likelihood that future filed actions will be filed, the risk inconsistent rulings on pretrial motions is substantially increased.  It is in the best interests of all parties, witnesses and the Court, to transfer and coordinate these actions.  All of the goals of § 1407 will be furthered by transfer and coordination of the actions.

     **C.**     **The Northern District of Georgia is the most appropriate transferee forum.**

The Panel balances a number of factors in determining the transferee forum, including: the experience, skill and caseloads of the available judges; the number of cases pending in the jurisdiction; the convenience of the parties; the location of the witnesses and evidence; and the minimization of cost and inconvenience to the parties. *See In re: Preferential Drugs Prods. Pricing Antitrust Litig.*, 429 F. Supp. 1027, 1029 (J.P.M.L. 1977); *In re: Tri-State Crematory Litig.*, 206 F. Supp. 1376, 1378 (J.P.M.L. 2002).

The Northern District of Georgia is best-suited to advance the convenience of the parties with respect to these actions.  ***First,*** the Northern District of Georgia has extensive data breach experience, with two of its judges presiding over complex, national data breach cases. *See In re Home Depot, Inc. Customer Data Sec. Breach Litig.*, MDL No. 2583 (Hon. Thomas W. Thrash); *Weiss, et al. v. Arby's Restaurant Group, Inc.*, No. 17-cv-01035 (N.D. Ga.).  And the proceedings in *In re Home Depot* are about to be concluded.  Claims by consumers against Home Depot were settled and the settlement has been finally approved.  Claims by financial institutions also have been settled and the final approval hearing is set for September 22, 2017.  Moreover, with only

five multidistrict cases currently pending there and one of those about to be concluded,[18] the Northern District of Georgia has the judicial resources available to effectively see this case through to completion.

**Second,** the Northern District of Georgia, Atlanta Division, is the most convenient forum for Equifax and potential witnesses. When assessing the appropriateness of potential transferee districts, the Panel often puts an emphasis on the central location of documents and witnesses, as that location typically provides the most convenient forum for the litigation. Absent transfer to the Northern District of Georgia, defendants will be required to litigate the same issues in multiple jurisdictions simultaneously, resulting in a significant increase in expense and inconvenience. Equifax's corporate headquarters is in Atlanta, Georgia, only a few miles from the courthouse, and it regularly conducts business in Georgia. As a result, a majority of the witnesses and relevant documents will be present in Georgia. This factor weighs heavily in favor of centralizing the litigation in the Northern District of Georgia. *See e.g. In re Vytorin/Zetia Mktg*., 543 F Supp. 2d 1378 (J.P.M.L 2008) (centralizing cases in District of New Jersey because two of the defendants had their corporate headquarters in New Jersey, and thus, relevant discovery could be found there, and transfer to that district enjoyed support of defendants and several plaintiffs); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig*., 559 F Supp. 2d 1405 (J.P.M.L 2008) (finding District of Maine was appropriate transferee district because large majority of actions were pending there and defendant had its headquarters in that district, and thus relevant documents and witnesses would be found there); *In re Wash. Mut., Inc*., 536 F Supp. 2d 1377 (J.P.M.L 2008)

---

[18] *See* Judicial Panel on Multidistrict Litigation Statistics, MDL Statistics by District, http://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-August-15-2017.pdf.

(centralizing litigation in Western District of Washington where defendant was headquartered in that District and witnesses and documents were located there).

*Third*, the Northern District of Georgia, Atlanta Division, provides a location allowing for easy access for all litigants and witnesses.  It is located in a major metropolitan area with hotels and public metro transportation to accommodate visiting attorneys.  It has a major international airport, Hartsfield-Jackson Atlanta International Airport, with direct, frequent and economical flights available from almost all major cities in the United States.  The Panel routinely assesses the ease of access to the transferee forum in selecting the transferee forum.  *See, e.g., In re Polyester Staple Antitrust Litig.*, 259 F. Supp. 2d. 1376 (J.P.M.L. 2003); *See also* Gregory Hansel, Extreme Litigation: *An Interview with Judge Wm. Terrell Hodges, Chairman of the Judicial Panel on Multidistrict Litigation*, 19 Me. B.J. 16, 19 (2004) ("[W]e take into account…the accessibility of the court, particularly air travel in selecting a transferee district.").

Accordingly, the Northern District of Georgia, where Equifax is located, is best-suited to oversee this multidistrict case.

### III.   CONCLUSION

Plaintiffs in the *Washburn* Action respectfully request this Panel transfer the scheduled actions and any additional tag-along actions to the Northern District of Georgia for coordinated or consolidated pretrial proceedings and institute the following expedited briefing and hearing schedule with respect thereto: responses to be filed on September 18, replies on September 22, and hearing on September 28.  The efficient transfer of these cases to the Northern District of Georgia will not only serve judicial economy, but it will also address major security threats facing 143 million individuals.

Dated: September 12, 2017

Respectfully submitted by:


*/s/ Adam J. Levitt*
    Adam J. Levitt
    Amy E. Keller
    Daniel R. Ferri
    **DiCELLO LEVITT & CASEY LLC**
    Ten North Dearborn Street
    Eleventh Floor
    Chicago, Illinois 60602
    T 312-214-7900
    alevitt@dlcfirm.com
    akeller@dlcfirm.com
    dferri@dlcfirm.com

    Kenneth S. Canfield
    Georgia Bar No. 107744
    **DOFFERMYRE SHIELDS CANFIELD**
    **& KNOWLES, LLC**
    1355 Peachtree St., NE
    Suite 1600
    Atlanta, Georgia 30309
    T 404-881-8900
    kcanfield@dsckd.com

    James Pizzirusso
    **HAUSFELD**
    1700 K St. NW
    Suite 650
    Washington, D.C. 20006
    T 202-540-7200
    jpizzirusso@hausfeld.com

    Pat A. Cipollone
    Robert B. Gilmore
    **STEIN MITCHELL CIPOLLONE BEATO**
    **& MISSNER LLP**
    1100 Connecticut Ave., N.W.
    Washington, DC 20036
    T 202-737-7777
    pcipollone@steinmitchell.com
    rgilmore@steinmitchell.com

Andrew N. Friedman
Douglas J. McNamara
Sally Handmaker
**COHEN MILSTEIN, SELLERS**
**& TOLL PLLC**
1100 New York Avenue, NW, Suite 500
Washington, DC 20005
T 202-408-4600
afriedman@cohenmilstein.com
dmcnamara@cohenmilstein.com
shandmaker@cohenmilstein.com

*Counsel for Plaintiffs in the Washburn Action*