BEFORE THE UNITED STATES JUDICIAL PANEL

ON MULTI-DISTRICT LITIGATION

| | |
|---|---|
| IN RE:<br><br>EQUIFAX, INC. CUSTOMER DATA<br>SECURITY BREACH LITIGATION | )  **MDL Docket No. 2800**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM IN PARTIAL OPPOSITION TO
THE MOTIONS FOR TRANSFER OF ACTIONS AND FOR
<u>CONSOLIDATION PURSUANT TO 28 U.S.C. § 1407</u>**

| | |
|---|---|
| **SCOTT COLE & ASSOCIATES, APC**<br>Scott Edward Cole (Cal. Bar #160744)<br>Teresa D. Allen (Cal. Bar #264865)<br>Corey B. Bennett (Cal. Bar #267816)<br>1970 Broadway, Ninth Floor<br>Oakland, California 94612<br>Telephone:  (510) 891-9800<br>Facsimile:   (510) 891-7030<br>scole@scalaw.com<br>tallen@scalaw.com<br>cbennett@scalaw.com<br><br>*Attorneys for Plaintiff Andrew Galpern* | **LAW OFFICES OF TIMOTHY P.<br>RUMBERGER**<br>Timothy P. Rumberger (Cal. Bar #145984)<br>1339 Bay Street<br>Alameda, California 94501<br>Telephone:  (510) 841-5500<br>Facsimile:   (510) 521-9700<br>tim@rumbergerLaw.com<br><br><br><br><br><br>*Attorneys for Plaintiff Andrew Galpern* |

**I.     INTRODUCTION**

Pursuant to 28 U.S.C. § 1407, Plaintiff Andrew Galpern ("Plaintiff"), Plaintiff in *Galpern v. Equifax, Inc., TrustedID, Inc.*, No. 5:17-cv-05265 (N.D. Ca.) submits this Response to the three Motions for Transfer (Dkt. Nos. 1, 19, 20) the [then] 97 cases identified by the Judicial Panel on Multidistrict Litigation in Schedule A in its September 18, 2017 Notice (collectively, "the Actions"), as well as any tag-along cases subsequently filed. Plaintiff supports coordinated or consolidated proceedings, but respectfully requests that the Actions be transferred to the United States District Court for the Northern District of California, San Jose Division.

**II.    BACKGROUND**

On September 7, 2017 (a jaw-dropping 40 days after its discovery thereof), Equifax notified the public of one of the most extensive data breaches in U.S. history. According to Equifax's reports that day, cyber-criminals ("hackers") accessed a peripheral part of the company's cyber-architecture between May and July 2017, with Equifax claiming to have discovered the breach only on July 29, 2017. It is not hyperbole to say the breach was massive, exposing the personal data--names, Social Security numbers, birth dates, addresses, driver's license and credit card numbers--of hundreds of thousands of credit consumers, and potentially exposing sensitive data for as many as 143 to 175 million others. In the aftermath of this disclosure, worried consumers were guided to an Equifax-sponsored website[1] where, so it was promised, they could determine if their personal identifying information was hacked, and so they could enroll in TrustedID Premier, an identity protection product offered by Equifax's Northern-California-based subsidiary, TrustedID, Inc.

---

[1]    https://www.equifaxsecurity2017.com/ (last visited on September 18, 2017)

1

Since the initial announcement, reports have surfaced that, as early as March 2017, Equifax knew of a vulnerability in its Apache Struts web-application software, a commonly used enterprise platform, but failed to make the relatively simple upgrade.[2] These reports explain that it was likely this vulnerability (and, generally, Equifax's negligence in failing to maintaining this system) that permitted hackers to penetrated it and access a trove of sensitive data.

On August 2, 2017, still well before its public announcement, but after its discovery of the breach, Equifax contacted Northern-California based FireEye, Inc. and thereafter engaged this vendor's subsidiary, Mandiant (a "leading, independent cybersecurity firm"), to conduct a "privileged, comprehensive forensic review to determine the scope of the intrusion, including the specific data impacted."[3] FireEye, Inc.'s headquarters are in Santa Clara County, California. Mandiant's headquarters are in Alexandria, Virginia, but, as a FireEye subsidiary, it maintains a significant presence in the San Francisco Bay Area.

Naturally, given the magnitude and extent of this data breach, every forum in this nation has a strong interest in the outcome of the ongoing investigations and lawsuits. However, the Northern District of California is clearly best-suited for this MDL. Indeed, notwithstanding Equifax's headquarters in Georgia, the location of witnesses and evidence strongly favor Northern California. Co-defendant TrustedID, Inc. is also based in Palo Alto, California. What's more, the company assisting Equifax in its forensic investigation, Mandiant, has employees, and its parent FireEye, Inc., has headquarters within California's Northern District. These parties and witnesses will be essential in assessing what happened leading up to the breach, efforts to remedy the technological deficiencies, and the fallout for consumers.

---

[2] https://www.bloomberg.com/news/articles/2017-09-18/equifax-is-said-to-suffer-a-hack-earlier-than-the-date-disclosed (last visited on September 21, 2017)

[3] https://www.equifaxsecurity2017.com/ (last visited on September 18, 2017)

The list of reasons for the requested transfer goes on: As the most populous state, California has the most potentially-affected people; not surprisingly, at least 40 actions have already been filed in California, 21 of which are in the Northern District. Finally, as the global hub for technological innovation, the Northern District is conveniently located to experts, companies, and jurists that deal with complex, technical issues on a daily basis.

The United States District Court for the Northern District of California, San Jose Division has already taken the first step of relating the cases within its jurisdiction and consolidating them before the Honorable Beth Freeman, a formidable jurist with extensive complex litigation management skill and background. This Opposition now seeks to bring all other pending cases and subsequently-filed tag-along cases before this tribunal.

### III.   ARGUMENT

#### A.  The Actions Should Be Consolidated

When civil actions in different districts all involve common questions of fact, it may be transferred to any district for "coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407(a). The Panel generally considers four factors in deciding whether to transfer a case under 28 U.S.C. § 1407: (a) the elimination of duplication in discovery; (b) the avoidance of conflicting rules and schedules; (c) the reduction of litigation cost; and (d) the conservation of the time and effort of the parties, attorneys, witnesses and courts. *See, e.g.*, *In re Plumbing Fixture Cases*, 298 F. Supp. 484 (J.P.M.L. 1968). Plaintiff agrees with movants in the three motions to the extent that these factors support transfer and consolidation of all cases filed against Equifax relating to the data breach. While there may be state statutory distinctions, or differences in proposed sub-classes, not consolidating the Actions would lead to multiplicative discovery efforts, excessive

litigation costs, and potentially inconsistent, conflicting rulings. *See, e.g., In re United States Office of Pers. Mgmt. Data Sec. Breach Litig.,* 138 F. Supp. 3d 1379, 1380 (J.P.M.L. 2015)(finding Section 1407 "does not require complete identity of parties" or legal theories "where all actions arise from a common factual core."). However, Plaintiff contends the Northern District of California is the most appropriate transferee district.

### B.  The Northern District of California is the Most Appropriate Transferee District

The ripple effect of this data breach will reach nearly every community in every state. At least 33 state attorneys general, in addition to the Federal Trade Commission, have initiated investigations. As such, there is no single obvious location to host this litigation. Rather, the Panel is charged with selecting an appropriate transferee district based on a number of considerations, none of which is dispositive. *See, e.g.*, *In re: Anthem, Inc., Customer Data Sec. Breach Litigation*, 109 F. Supp. 3d 1364 (J.P.M.L. 2015) (transferring to the Northern District of California despite Anthem being headquartered in Indiana.) The Georgia Plaintiffs, for example, contend that the Northern District of Georgia is preferable because Equifax is headquartered there and Atlanta has a large airport. The Pennsylvania Plaintiff takes a different approach, relying on more favorable docket conditions in the Eastern District. Plaintiff in the instant action, however, urges the Panel to consider the Northern District of California based on numerous other factors.

#### 1.  Defendant TrustedID, Inc. is Headquartered in the Northern District of California

Plaintiff concedes that a significant number of documents[4], and perhaps even some key witnesses, may be found at Equifax's headquarters. However, Equifax subsidiary TrustedID,

---

[4]  Although hard copies of relevant documents may indeed be housed at Equifax's Georgia headquarters, gone are the days of conference room reviews of towers of bankers' boxes.

Inc., a co-defendant in some of the Actions,[5] is headquartered in the Northern District of California. After announcing the data breach, Equifax offered free credit monitoring and identity theft protection through its product TrustedID Premier. Following consumer backlash, Equifax had to clarify whether consumers who signed up for TrustedID Premier would be subject to mandatory arbitration and a class action waiver.[6] Equifax confirmed that TrustedID Premier terms and conditions were separate from those on its main site. Evidence related to this threshold legal issue, and to the product's ability to monitor credit and protect against identity theft going forward, favors the Northern District of California.

### 2. Equifax Hired FireEye, Inc.'s Subsidiary to Conduct Forensic Analysis

In searching for a "significant nexus to this litigation," the location of evidence and witnesses preceding and following an event has import. In *In re Pacquiao-Mayweather Boxing Match Pay-Per-View Litig.,* 122 F. Supp. 3d 1372 (J.P.M.L. 2015), the Panel consolidated ten actions across eight districts to the Central District of California. In its order, the Panel noted it had the most related actions and was the location where the defendant trained and sought treatment, even though the event was held in Nevada. *Id.* (finding "documentary evidence and witnesses concerning the injury at the center of this dispute likely will be located within the Central District of California.").

Before announcing the data breach, Equifax contacted Mandiant Corporation, a cybersecurity firm to conduct a forensic review. According to its website, "Mandiant, a FireEye

---

Through .pdf file transfers, materials in this litigation will be equally at the fingertips of readers in any state.

[5] TrustedID, Inc. will provide critical documentary and testimonial evidence in each of the Actions and may be a necessary party under Fed. R. Civ. P. Rule 19.

[6] https://www.washingtonpost.com/news/the-switch/wp/2017/09/08/what-to-know-before-you-check-equifaxs-data-breach-website/?utm_term=.b958f52dc044 (last visited on September 18, 2017)

company, is the leader in helping organizations respond to and proactively against advanced cyber security threats."[7] FireEye, Inc.'s headquarters are located in the Northern District of California. Mandiant is a Delaware corporation headquartered in Virginia and maintains significant contacts to its parent company. The Actions will require testimony and evidence relating to Equifax's engagement of FireEye and/or Mandiant, particularly those that occurred before the data breach was made public, as well as the findings of the subsequent forensic analysis. This, too, favors venue in the Northern District of California.

### 3. California Will Likely Have The Most Victims And Actions Filed

As the most populous state in the country, California is likely to have the most victims of this security data breach. According to California Attorney General Xavier Becerra, who is among those elected officials investigating the breach, more than 15 million of California's 39 million residents have been affected.[8] In the weeks and months to come, California District Courts will likely see a flood of additional cases.

Moreover, it is prudent to consider not only how many actions are pending in the subject district, but in adjacent districts as well. *See, e.g., In re Plavix Marketing, Sales Practices and Prods. Liab. Litig. (No. II),* 2013 WL 565971, at *2 (J.P.M.L. Feb. 12, 2013)(considering nearby state court proceedings to determine the appropriate venue). Furthermore, in cases where actions are clustered, the Panel may choose a centrally-located district. *See, e.g., In re Pamidronate Prods. Liab. Litig.,* 657 F. Supp. 2d 1368 (J.P.M.L. Dec. 2, 2009)(finding the Eastern District of New York "provide[d] an accessible metropolitan forum" for litigation concentrated on the East Coast). As a result, it is persuasive that, not only have multiple actions been filed in the Northern

---

[7] https://www.fireeye.com/services.html (last visited on September 18, 2017)
[8] https://oag.ca.gov/news/press-releases/attorney-general-becerra-issues-consumer-alert-following-equifax-data-breach (last visited on September 18, 2017)

District, but other nearby California Districts as well. This collection of actions reveals the Northern District to be an ideally-centralized venue.

### 4. Northern District of California Jurists Have The Experience, Expertise, and Resources for Data Breach and Cybersecurity Litigation

The consolidated Equifax litigation would hardly be the first such MDL to be assigned to a Northern District of California jurist; indeed, as of the time of filing this Opposition, this venue is managing 22 MDLs, including customer data breach cases involving Anthem and Yahoo![9] To manage these impressive dockets, the District boasts talented jurists with experience handling massive data breaches and an array of complex technical issues related to patent, intellectual property, privacy, and product liability disputes. As one would expect, its proximity to Silicon Valley, home to the fastest-expanding technological advances in the world, demands such expertise.

Among other talented jurists, The Honorable Beth Freeman (before whom the currently-pending Equifax cases in the District have already been consolidated)[10] has an excellent grasp of complex technology in intellectual property and patent disputes involving tech-world titans. Another distinguished judge is The Honorable Lucy H. Koh (who was the judge initially assigned to Plaintiff's case). Judge Koh currently presides over *In re Anthem Data Breach Litig.*, 15-MD-02617-LHK and *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 16-MD-02752-LHK. Previously, she was assigned to *In re Adobe Sys. Privacy Litig.,* 13-CV-05226-LHK (terminated 8/14/2015), which involved over three million compromised payment cards. These

---

[9] MDL Statistics Report, available at http://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-September-15-2017.pdf (last visited September 19, 2017).

[10] See, e.g., *Spicer v. Equifax Inc.*, No. 5:17-cv-05228-BLF (Dkt. 10); *Galpern v. Equifax Inc.,* No. 5:17-cv-05265-BLF (Dkt. 14)

7

jurists are just two of the skilled complex case management jurists in this venue, suggesting that the talent in this forum for handling cases of this nature runs deep.

Next, the Northern District of California is well-equipped to handle a case of this magnitude because it has no current vacancies, whereas the Eastern District of Pennsylvania and Northern District of Georgia have three and two, respectively.[11]

### 5. Convenience Favors The Northern District of California

And, finally, convenience favors the Northern District of California. As the home of Silicon Valley, the Northern District hosts the world's foremost experts in data security and technology management. It is supported by three international airports that welcome tens of millions of visitors each year to this global destination for business and tourism.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff Andrew Galpern respectfully requests that the Actions be consolidated/coordinated and transferred to the United States District Court for the Northern District of California, San Jose Division.

Respectfully submitted,

By: /s/ Scott Edward Cole
Scott Edward Cole, Esq.
**SCOTT COLE & ASSOCIATES, APC**
1970 Broadway, Ninth Floor
Oakland, California 94612
Telephone: (510) 891-9800
Facsimile: (510) 891-7030
scole@scalaw.com

*Attorneys for Plaintiff Andrew Galpern*

---

[11] http://www.uscourts.gov/judges-judgeships/judicial-vacancies/current-judicial-vacancies (last visited on September 19, 2017).